1
2
3
4

**Konrad L. Trope**  (California SBN: 133214)
TROPE LAW GROUP, P.C.
5737 Kanan Rd., #585
Agoura Hills, CA 91301
Phone:  (818) 575-7423
Email: ktrope@tropelawgroup.com

5
6

Attorneys for Plaintiffs Nicholas Cassavetes,
NewYellow Productions, LLC, Eric Geisler

7

8

## UNITED STATES DISTRICT COURT

9

## CENTRAL DISTICT OF CALIFORNIA, WESTERN DIVISION

10

11
12
13
14

NICHOLAS CASSAVETES, a resident of the State of California; NEW YELLOW PRODUCTIONS, LLC, an Oklahoma Limited Liability Company; Eric Geisler, a resident of the State of California,

15

                                        Plaintiffs,

16

                        vs.

17
18
19
20
21
22

AMAG, INC., a California Corporation; A-MARK ENTERTAINMENT, INC., a California Corporation; STEPHEN MARKOFF, a California resident; BRUCE MCNALL, a California resident; ROBERT FRCEK, a California resident; and DOES 1 through 10, inclusive,

23

                                        Defendants.

24
25
26
27
28

Case No: _____

[Before the Hon. _____]

**COMPLAINT FOR DAMAGES, INJUNCTIVE RELIEF, AND DECLARATORY RELIEF:**

1. **Direct Copyright Infringement;**
2. **Direct Copyright Infringement;**
3. **Direct Copyright Infringement;**
4. **Direct Copyright Infringement;**
5. **Direct Copyright Infringement;**
6. **Direct Copyright Infringement;**
7. **Direct Copyright Infringement;**
8. **Direct Copyright Infringement;**
9. **Direct Copyright Infringement;**
10. **Direct Copyright Infringement;**
11. **Direct Copyright Infringement;**
12. **Direct Copyright Infringement;**
13. **Direct Copyright Infringement;**
14. **Direct Copyright Infringement;**
15. **Direct Copyright Infringement;**
16. **Direct Copyright Infringement;**
17. **Direct Copyright Infringement;**
18. **Direct Copyright Infringement;**
19. **Direct Copyright Infringement;**
20. **Contributory Copyright Infringement;**
21. **Contributory Copyright Infringement;**
22. **Contributory Copyright Infringement;**
23. **Vicarious Copyright Infringement;**

1

24. **Vicarious Copyright Infringement;**
25. **Vicarious Copyright Infringement; and**
26. **Declaratory Relief Under Federal Declaratory Relief**

**JURY DEMAND**

**COMES NOW**, Plaintiffs NICHOLAS CASSAVETES, a resident of the State of California; YELLOW PRODUCTIONS, LLC, an Oklahoma Limited Liability Company; ERIC GEISLER, a resident of the State of California, presenting their complaint herein against Defendants AMAG, Inc., a California Corporation; A-MARK Entertainment, Inc., a California Corporation; Stephen Markoff, a California resident; Bruce McNall, a California resident, and allege as follows:

## THE PARTIES

1.      Plaintiff Nicholas Cassavetes is a resident of the State of California ("Cassavetes").

2.      Plaintiff, New Yellow Productions, LLC is an Oklahoma Limited Liability Company ("NYP") and is the successor in interest to Yellow Productions, LLC, a former Oklahoma Limited Liability Company ("YP")[1].

3.      Plaintiff Eric Geisler is a resident of the State of California ("Geisler").

4.      Defendant AMAG, Inc. is a California Corporation ("AMAG").

5.      Defendant A-MARK Entertainment, Inc. is a California Corporation ("A-MARK") and is either owned by AMAG or is controlled by Markoff.

6.      Defendant Steven Markoff is a California resident ("Markoff").

7.      Defendant Bruce McNall is a California resident ("McNall").

8.      Plaintiffs are informed, believe and thereon allege that Defendants Steven Markoff and Bruce McNall were aware, authorized, approved and conspired

---

[1] YP lost its state charter in 2017 and retroactively reinstated as NYP on or about February 1, 2023. See Para. 26, *infra*, and Exhibit "9" attached hereto.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1   with other Defendants in the illegal conduct of Defendants AMAG and A-MARK
2   alleged herein.

3   　　　9.   The true names and capacities of the Defendants sued in this
4   Complaint as DOES 1 through 10, inclusive, whether individual, corporate,
5   associate, or otherwise, are presently unknown to Plaintiffs who therefore sue these
6   Defendants by such fictitious names.  Plaintiffs will amend this Complaint to set
7   forth the true names and capacities of DOES 1 through 10, inclusive, when they
8   have been ascertained or at the time of trial herein.  Plaintiffs are informed, believe
9   and thereon allege that each of these such fictitiously named Defendants
10  participated in some manner in the events and occurrences referred to hereinafter
11  and/or proximately caused the damages complained of herein.

12  　　　10.  Plaintiffs are informed, believe and thereon allege that, at all times
13  herein mentioned, each of the Defendants (including inter alia, the fictitiously
14  named Defendants) was the agent, servant, employee or co-conspirator of each of
15  the other Defendants, and doing the things herein alleged, was acting in the scope
16  of his, her, or its actual, apparent or special authority as such agent, servant,
17  employee or co-conspirator, and with the permission or consent of each such co-
18  Defendant.

19  　　　　　　　　　　**JURISDICTION AND VENUE**

20  　　　11.  Plaintiffs Cassavetes, NYP, and Geisler (collectively "Plaintiffs"),
21  bring this civil action pursuant to the 17 U.S.C §§ 101, 500, *et. seq.*

22  　　　12.  Plaintiffs are informed and believe and thereon allege that Defendant
23  AMAG, Inc. is and was at all relevant times a corporation formed under the laws of
24  the State of California with its principal place of business at 233 Wilshire Blvd.,
25  Suite 200, Santa Monica, California 90401.

26  　　　13.  The Court has jurisdiction over the subject matter of this action
27  pursuant to the Copyright Act of the United States, 17 U.S.C. §§ 101, 501 *et seq.*
28  and pursuant to 28 U.S.C. § 1338(a).

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

14.     Venue is properly laid in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because the Defendants reside, may be found or transact business in this District.

15.     This court also has supplemental jurisdiction over all other claims that do not arise under a federal statute in that these supplemental claims are so related to the claims in the action within such original jurisdiction of this court that they form part of the same case or controversy under Article III of the *United States Constitution* pursuant to 28 U.S.C. § 1367.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

16.     On or about September 13, 2011, AMAG entered into a loan agreement with YP under which AMAG made a secured loan in the original principal amount of $1,000,000 to Plaintiffs for completion of a motion picture entitled "Yellow" (the "Picture").  A true and correct copy of the loan agreement (the "Loan Agreement") between AMAG and Plaintiffs is attached hereto and incorporated herein as Exhibit "1" (the "Loan Agreement"). The Loan Agreement specifically mandated that AMAG had complete and absolutely approval over any distribution deals to commercially exploit the Picture. See Page 3 at Exhibit "1".

17.     As part of the Loan Agreement, YP executed on September 13, 2011, a Promissory Note in favor of AMAG (the "Note"). See true and correct copy of the Note attached hereto and incorporated herein as Exhibit "2".

18.     To secure the Note, YP granted AMAG a security interest in the following property:

"[A]ll personal property, whether tangible or intangible, wherever located or situated, and whether now owned or hereafter at any time acquired by Borrower, including but not limited to, goods, accounts, general intangibles, equipment, copyrights, trademarks, contracts, licenses and any proceeds thereon or income therefrom including, but not limited to, all right, title and interest, whether now owned or

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

1      hereafter at any time acquired by Borrower, in and to or otherwise

2      related to the Picture. (the "Collateral")."

3  A true and correct copy of the Security Agreement dated September 13, 2011, is

4  attached to this Complaint as Exhibit "3".

5      19.     Pursuant to the Loan Agreement, as further security for the Note YP

6  executed a Mortgage of Copyright on September 13, 2011, pursuant to which YP

7  granted to AMAG a priority security interest in the Picture, including, but not

8  limited to, its copyright, physical elements, and underlying rights, titles and interest.

9  ("AMAG's Mortgage") (collectively the "Loan" or "Loan Documents".).  See

10  Exhibit "4" attached hereto.

11     20.     AMAG recorded the AMAG Mortgage with the United States

12  Copyright Office on September 26, 2011.  See Exhibit "5," attached to this

13  Complaint.

14     21.     Jeffrey Berg ("Berg") and Nicholas Cassavetes ("Cassavetes"),

15  separately guaranteed the Note; the latter was one of the managing members of YP

16  along with Manu Kumaran ("Kumaran").  See true and correct copies of Berg

17  Continuing Personal Guaranty and Cassavetes Continuing Personal Guaranty,

18  attached hereto as Exhibits "6" and "7".

19     22.     The negotiations between AMAG and NYP for the Loan during the

20  Spring and Summer of 2011, involved McNall, acting for Markoff, and thus

21  McNall was and still is acting as an officer or agent with authority for A-MARK

22  and AMAG.  In several discussions, McNall, on behalf of all other Defendants

23  insisted that AMAG would not loan money to YP without the guarantees of Berg

24  and Cassavetes.

25     23.     McNall personally assured Cassavetes, Kumaran, both of whom were

26  the managing members of YP at that time, that the guarantees were just a formality

27  and that Markoff (i.e. AMAG) would never seek to enforce the Personal Guarantees

28  of either Berg or Cassavetes.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

24.     These personal assurances by McNall took place at a film editing studio in Hollywood in September 2011, where Cassavetes was editing the Film. In attendance was Manu Kumaran, a managing member of NYP, and the producer of the Film, along with Defendant McNall, the latter was pressuring Cassavetes to sign his Guarantee.

25.     On or about October 19, 2012[A1], YP assigned all its of its assets *except the copyright i*n the Picture (except the Copyright) to Kumaran Holdings, LLC ("Holdings"), which assumed all of YP's debts including the Note.  See Rights Purchase Agreement at Exhibit "8" attached to this Complaint.

26.     YP is informed and believes that Holdings gave notice of that assignment to AMAG at or about the time it was made. Despite transferring all of its debts and assets to Holdings, YP continued to exist as a limited liability company until its charter was revoked in 2017.  On or about February 1, 2023, YP revived its charter under the name New Yellow Productions, LLC ("NYP").  See Exhibit "9" attached hereto..

## CHAIN OF TITLE TO THE COPYRIGHT OF THE FILM AND RELATED RIGHTS

27.     Prior to, and subsequent to the execution of the Loan Documents between AMAG and NYP, on or about September 13, 2011, the following documents evidencing a purported copyright interest in the Picture were registered or recorded with the USCO:

| Date of Recordation | Registration or Document Number | Grantee or Copyright Claimant | Type of Work Registered or Recorded | Grantor or Authorship on Copyright Registration |
|---|---|---|---|---|
| May 26, 2011 | Registered Copyright PaU003559268 | Nicholas Cassavetes, Heather Wahlquist | Screenplay for "Yellow": Dramatic Work | Nicholas Cassavetes, Heather Wahlquist |

| June 6, 2011 | Recorded Agreement V3604 D432 P1-22 | Directors Guild of America, Inc. | Security Agreement | Yellow Productions, LLC |
|---|---|---|---|---|
| June 10, 2011 | Recorded Agreement V3604D476 P1-22 | Screen Actors Guild, Inc. ("SAG") | Security Agreement | Yellow Productions, LLC |
| June 23, 2011 | Recorded Agreement V3604 D772 P1-5 | Indion Finance, LLC | Copyright Mortgage and Assignment | Yellow Productions, LLC |
| September 26, 2011 | Recorded Agreement V3608 D473 P1-2 | AMAG, Inc. | Mortgage of Copyright | Yellow Productions, LLC |
| September 21, 2012 | Recorded Agreement V3621 D157 P1-2 | Directors Guild of America ("DGA") | California Superior Court Judgment confirming arbitration award | Yellow Productions, LLC |
| April 17, 2015 | Recorded Agreement V9921 D253 P1-5 | Indion Yellow, LLC | Copyright Assignment and Transfer | Yellow Productions, LLC |
| December 27, 2023 | Recorded Assignment No. 1-64OBLZI | Yellow Productions (n/k/a New Yellow Productions) | Assignment of Copyright | Nick Cassavetes and Heather Wahlquist |

7                                              COMPLAINT FOR COPYRIGHT
                                                              INFRINGEMENT

| December 27, 2023 | Pending Registration No. 1-64OBLYV | New Yellow Productions, LLC | Receipt for Copyright Registration | New Yellow Productions |
|---|---|---|---|---|

28.    These registered instruments purport that the above Grantees or Claimants have recorded or a **perfected security interest** in the Film, which is a pledge of property relating to the "existence, scope, duration or identification of a copyright or to the ownership, division, allocation, licensing, transfer, or exercise of rights under a copyright." *See 37 C.F.R. § 201.4(a)(2) which derives its underlying authority from 17 U.S.C. § 201*. That security interest "may be past, present, future, or potential". See *37 C.F.R. § 201.4(a)(2).*

## AMAG'S PARTIAL SALES/ASSIGNMENTS OF THE NOTE TO THIRD PARTIES

29.    NYP is informed and believe that Kumaran acquired 1,083,000 shares of the publicly traded common stock of Medient Studios, Inc. ("MDNT") common stock, representing approximately 77% of MDNT's outstanding common shares at that time.  MDNT's directors then appointed Kumaran to the board, and thereafter he served as CEO, CFO, and Secretary of MDNT.  Thereafter, MDNT acquired Holdings on November 26, 2012.  See MDNT Form 10-K filed with U.S. Securities and Exchange Commission ("SEC") for fiscal year ending December 31, 2012, attached hereto as Exhibit "10" and incorporated herein.

30.    Thus, as of December 31, 2012, MDNT assumed debts and obligations and other interests in YP, but not the Copyright, which was and is still retained by NYP*.  See Rights Purchase Agreement attached hereto as Exhibit "8".*

31.    From September 13, 2013, to July 7, 2014, AMAG, MDNT and Holdings executed 16 partial purchases of the Note ("Debt Purchase Agreements"

COMPLAINT FOR COPYRIGHT INFRINGEMENT

or "DPA's") to six companies (collectively, the "Assignees") for which the Assignees paid aggregate purchase price of $1,223,660.68.

32.    Defendant Robert Frcek, AMAG's CFO, in his September 25, 2017 declaration, filed with the Los Angeles Superior Court, disguised or camouflaged the DPA's in a complex Loan Schedule. The Frcek Declaration with the Loan Schedule is attached hereto as Exhibit "11".

33.    The Loan Schedule prepared by Defendant Frcek reflects the DPA's as follows:

| Assignee | Date | Amt. Paid | Applied to Principal |
|---|---|---|---|
| Magna Group | 20-Sep-13 | $200,000.00 | $0.00 |
| Redwood Mgt. | 05-Feb-14 | $25,000.00 | $25,773.20 |
| Redwood Mgt. | 12-Feb-14 | $50,000.00 | $51,548.39 |
| Redwood Mgt. | 21-Feb-14 | $37,235.90 | $38,387.52 |
| Redwood Mgt. | 17-Apr-14 | $81,764.10 | $84,292.89 |
| Coventry | 25-Apr-14 | $200,000.00 | $200,000.00 |
| Maremmano | 30-Apr-14 | $50,000.00 | $50,000.00 |
| Redwood Mgt. | 23-May-14 | $50,000.00 | $51,548.39 |
| Coventry | 29-May-14 | $200,000.00 | $200,000.00 |
| Redwood Mgt. | 30-May-14 | $50,000.00 | $51,548.39 |
| Redwood Mgt. | 06-Jun-14 | $50,000.00 | $51,548.39 |
| Redwood Mgt. | 13-Jun-14 | $50,000.00 | $51,548.39 |
| Redwood Mgt. | 20-Jun-14 | $50,000.00 | $51,548.39 |
| JSJ Capital Funding | 24-Jun-14 | $44,660.68 | $0.00 |
| LG Capital Funding | 24-Jun-14 | $75,000.00 | $0.00 |
| Redwood Mgt. | 07-Jul-14 | $10,000.00 | $10,309.28 |
| **Total** | | **$1,223,660.68** | **$918,053.23** |

34.    Conspicuously, the Spreadsheet reflects no payment from either YP or Holdings.  Rather, all of the payments came from the Assignees, not YP, with the last DPA payment coming from Redwood Management on July 7, 2014.

35.    Under each DPA, AMAG assigned or sold a portion of the Note and a portion of its Copyright Mortgage in exchange for value received (the cash payments) that the Assignees paid to AMAG.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

36.   Each partial assignment of the Note as confirmed by the corresponding and executed DPA, was a "transfer of copyright ownership". *See 17 U.S.C. § 101.*

37.   As the assignor or transferor of each DPA, AMAG made the following false warranties and representations:

"**Representations.** Assignor warrants and represents that it has good title to said Acquired Debt, full authority to sell and transfer same, that any shareholder or Board of Director approval of the Assignor has been obtained and that said Acquired Debt is being sold free and clear of all liens, encumbrances, liabilities and adverse claims, of every nature and description."

38.   Plaintiffs are informed and believe and thereon allege that based on documents recorded with the USCO, AMAG's warranties and representations for each of the 16 DPA's was false and that all named Defendants knew that AMAG's warranties and representations were false.

39.   As a direct consequence of the execution of these DPA's, Plaintiffs are informed and believe the AMAG's Note from NYP are fully repaid as of July 7, 2014, thereby extinguishing AMAG's Copyright Mortgage by operation of law as of July 7, 2014.

40.   However, neither AMAG nor any of the six Assignees ever recorded these sixteen (16) DPA's with the USCO. Thus, none of the Assignees perfected security interest in the Film. See 17 U.S.C. § 205.

## AMAG OBTAINS 2017 DEFAULT JUDGMENT
## AGAINST NYP FOR $498,095.93

41.   On or about April 18, 2017, AMAG sued YP for breach of the Note and other claims[2] in the Superior Court for the State of California, County of Los

---

[2] Note:  YP is now NYP, as of February 1, 2023.  See Exhibit "9" attached hereto.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

Angeles ("LASC") in the action styled *AMAG, Inc. v. Yellow Productions, LLC*, Case No. SC127410 (the "2017 AMAG Action").

42. Despite the extinguishment of its security interest in the Film, arising out of the payments made by the Assignees, AMAG did not disclose these DPA's to the LASC, when prosecuting and obtaining Judgment in the 2017 AMAG Action.

43. AMAG represented in the 2017 AMAG Action, that it had secured all rights in the Picture and had full authority to initiate an action on the Note.

44. Six years later, no documents have been uncovered granting any rights to AMAG from any of the Assignees to institute the 2017 AMAG Action.

45. On October 23, 2017, Defendant AMAG with declarations signed by Defendants Markoff and Frcek, obtained a default judgment (the "Judgment") against YP, which provided as follows:

  *a.* "AMAG, Inc. shall recover from Yellow Productions, LLC the amount of $498,095.93 as of September 1, 2017, consisting of principal in the amount of $81,958.77, accrued and unpaid interest of $408,095.93 and fees in the amount of $8,245.78, plus interest after September 1, 2017, at the per diem rate of $241.67 until judgment is entered and thereafter at the rate allowed by California law;

  *b.* AMAG, Inc. has a valid and enforceable security interest in the Collateral described in the Security Agreement identified in the Complaint dated September 13, 2011 and that AMAG, Inc. shall have ***the right to exercise its rights to collect and sell the Collateral pursuant to the terms of the Security Agreement identified in the Complaint and Article 9 of the California Commercial Code and to apply the net proceeds to the amounts***

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

1    *adjudged as owed by Yellow Productions, LLC to AMAG, Inc.*
2    *pursuant to this Judgment*; and

3    **c.**      AMAG, Inc., has a valid and enforceable security interest,
4    copyright mortgage and lien in and to the motion picture,
5    including, but not limited to the copyright, physical elements,
6    screenplay (Pau003559268) and underlying rights, titles and
7    interest, known as "Yellow" ***and that AMAG, Inc. shall have***
8    ***the right to exercise its rights to collect and sell the rights in***
9    ***that motion picture, and all other rights associated therewith,***
10   ***and to apply the net proceeds to the amounts adjudged as owed***
11   ***by Yellow Productions, LLC to AMAG, Inc. pursuant to this***
12   ***Judgment" (emphasis added).***

13   A true and correct copy of the Judgment is attached as Exhibit "12".

14        46.    To further disguise AMAG's partial sales of the Note, which
15   extinguished the Note, neither the complaint nor the application for Default
16   Judgment in AMAG's 2017 Action make any specific reference to the 16 partial
17   sales of the Note to the Assignees (the previously discussed DPA's). Instead, the
18   name of each assignee was buried in the comments column of the Loan Schedule
19   attached to Frcek's Declaration.  See Exhibit "11".

20        47.    Instead, Markoff and Frcek presented declarations to the LASC that
21   there was due and owing $81,958.77 in unpaid principal and accrued but unpaid
22   interest in the amount of $408,095.93.  Frcek represented in his declaration that the
23   last payment  by YP was made on July 7, 2014.  In fact, that payment was  made by
24   Redwood Management, not YP.

25        **AMAG'S ENFORCEMENT OF THE 2017 JUDGMENT AND 2020**
26            **ENFORCEMENT OF BERG'S GUARANTY**

27        48.    Consistent with the terms of the 2017 Judgment, AMAG began
28   enforcing its rights in the Collateral sometime in early 2018 by gaining possession

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

of the physical elements and electronic manifestations of the Picture. From early 2018 through November 2021, McNall was directly involved in AMAG's disingenuous efforts to commercially exploit the Film.  During that period, AMAG repeatedly demanded an upfront "advance" (advance payment) of over $500,000 as part of any distribution deal for the Film.

49.     Notwithstanding that the Judgment of October 2017 stating to the contrary, Plaintiffs are informed and believe that AMAG repeatedly and baselessly stated in writing to multiple third parties, including Plaintiffs named herein, that AMAG owns all rights to the Picture including the Copyright.

50.     A-Mark Entertainment and AMAG, have repeatedly, on a daily basis, since 2017, and to this day, posts on websites that they have ownership and control the Picture.

51.     Markoff, AMAG's president/CEO, who is also A-MARK's president/ CEO, sent a June 26, 2018, letter to IMBD, the leading entertainment industry internet database demanding that IMBD change its records regarding the Picture to reflect that AMAG owed all of the copyright and distribution rights.   A true and correct copy of June 26, 2018 letter from AMAG to IMBD, signed by Defendant Steve Markoff as Chairman of AMAG. Is attached hereto as Exhibit "13".

52.     Indeed, during 2012 through 2017, before AMAG obtained its fraudulent 2017 Judgment, AMAG refused to approve, any transactions to exploit the Picture commercially. Thus, the Picture has been and is tainted, though unpublished, because of the conduct of Defendants AMAG, A-MARK, Markoff, McNall, and Frcek.

53.     Plaintiffs are informed and believe that AMAG has never sold or otherwise monetized the Film for commercial exploitation and financial gain.

54.     Consistent with the terms of the 2017 Judgment, AMAG began enforcing its rights in the Collateral sometime in early 2018 by gaining possession of the physical elements of the Film.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

55.     Starting sometime around November 2017, Berg approached Markoff on multiple occasions about making arrangements to distribute the Picture.  Berg had originally been attached to the Film as its Sales Agent during the time frame of 2011-2014, as well as having executed a Personal Guaranty on the 2011 Note.

56.     By the end of November 2020, Plaintiffs are informed and believe that Berg had presented multiple proposals to distribute the Picture to Markoff.  McNall served as the "go-between" Berg and Markoff with each distribution proposal presented by Berg.

57.     Plaintiffs are informed and believe that Markoff refused to accept any proposal presented by Berg without an up-front cash payment from the proposed distributor of approximately $500,000. Such payments, if agreed, represent advance payments of distribution fees payable to the owner of the motion picture.  The upfront fees are sometimes referred to as an "Advance Payment" in the entertainment industry.

58.     Despite Berg having brought several distribution deals to Markoff, and McNall, both McNall and Markoff rejected each potential proposal. McNall conveyed to Berg, via emails, that the possibilities for a distribution deal looked dubious; accordingly, McNall made it clear to Berg in late 2019 and early 2020, that Markoff was losing patience and wanted to enforce Berg's Personal Guaranty for alleged amounts still due and owing on the 2011 Note.

59.     Neither Markoff, nor McNall, and nor Frcek, ever disclosed to Berg any information that the Assignees had paid $1.22 Million to purchase the Note. Instead, they falsely represented to Berg in multiple emails between 2018 and 2020 that nearly $500,000 was still due on the 2011 Note, pursuant to the October 2017 Judgment.

60.     Indeed, owing to AMAG's extinguished and fraudulent Copyright Mortgage, still on file with the USCO, and because of the industry wide knowledge of AMAG's 2017 Judgment, along with Markoff's repeated refusals to approve any

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

distribution agreement proposals, Berg was never able to complete a distribution deal on behalf of NYP for the Film.

61.    On February 13, 2020, Jeffrey Berg entered into a settlement of his guaranty to AMAG for a $300,000.00 payment to AMAG ("Berg Settlement Agreement").  A copy of the Berg Settlement Agreement is attached hereto as Exhibit "14".

62.    The Berg settlement agreement provides:

"2.    _Representations, Warranties and Indemnification by Lender._

a. _Lender represents and warrants as follows: ... (iii) it has the right, title and interest in and to the payments being made to it under this Settlement Agreement; and (iv) the Settlement Payment is subject to no judgments, liens, or other claims of record against it._ (Emphasis added.)"

63.    That statement is patently false because the Assignees still had outstanding, _though unperfected_ security interests in the 2011 Note, the 2011 Copyright Mortgage and thus liens upon the Copyright of the Film and upon any guaranty of the Film by Berg or Cassavetes under UCC § § 9109(a)(3) and 9318(a).

**PLAINTIFF ERIC GEISLER**

64.    From the inception of the production of the Picture, Plaintiffs Eric Geisler acted as the Production Supervisor, Picture Editor, Sound Editor, and Special Effects Editor.

65.    Geisler is informed and believe and thereon alleges that he has a copyright interest in the Picture.  However, when he sought to get $300,000 compensation for all of the outstanding invoices rendered for the production of the Film in March 2017, AMAG, responded by filing an action in LASC seeking

COMPLAINT FOR COPYRIGHT INFRINGEMENT

damages for *inter alia* Conversion, Return of Personal Property, and Injunctive Relief (the "2017 Geisler Action") in the LASC in the case entitled *AMAG v. Geisler, et. al.,* bearing LASC Case No. SC129060.

66.   In response to Markoff's "scorched earth" litigation threats, Geisler executed a settlement and release agreement ("Geisler Settlement") in 2018.

67.   As part of the Geisler Settlement, AMAG again represented and warranted that:

> "as to the matters released herein, there is no assignment, transfer, or purported assignment or transfer of any claim or right as against another Party or to any other person not a Party hereto and that each Party is fully entitled to compromise and settle same." (emphasis added)

68.   Like the Berg Settlement, AMAG fraudulently and falsely asserted that there were no other parties with a "transfer" or "claim" in the Film.

## AMAG'S 2021 ACTION AGAINST CASSAVETES ON HIS GURANTY AND CASSAVETES 2022 COUNTER-CLAIM AND NYP'S ACTION FOR DAMAGES THAT AMAG HAD CONVERTED THE FILM AND ACTED IN A COMMERCIALLY UNREASONABLE FASHION: THE LASC CONSOLIDATED ACTION

69.   In the 2021 AMAG Action, AMAG sought to enforce the Personal Guaranty signed by Nicholas Cassavetes, under the fraudulent guise that AMAG is still owed over $500,000 on the Note.

70.   And once again, just like in 2017, AMAG never disclosed in the 2021 AMAG Action, that it has recouped over $1,700,000 on the Note in payments from the 6 Assignees (2012-2014) and a $300,000 payment from Berg in 2020.

71.   In response to AMAG's November 2021 Action, Cassavetes timely answered and filed counterclaims alleging *inter-alia,* breach of contract and declaratory relief.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

72.     Then based on documentation belatedly produced by Defendant AMAG, in December 2022, Plaintiff NYP on or about February 27, 2023, filed a separate complaint in the LASC against AMAG, bearing case number 23STCV2404155 (the "NYP 2023 Complaint") alleging causes of action for:

1.     Failure to Exercise Reasonable Care:
        Violation of Cal. Comm. Code § 9207;

2.     Improper Disposition of Collateral:
        Violation of Cal. Comm. Code § 9610;

3.     Breach of the Covenant of Good Faith and
        Fair Dealing: Violation of Cal. Comm. Code § 1203;

4.     Conversion;

5.     Abuse of Process;

6.     Unfair Business Practices: Violation of B&P Code § 17200; and

7.     Declaratory Relief

73.     In June 2023, The Superior Court consolidated AMAG 2021 Action, the Cassavetes 2022 Action, and the New Yellow 2023 Action, (the "2023 Consolidated Action").

74.     Since consolidation, the parties have filed motions for Summary Judgment; and Judgment on the Pleadings, which have not been finally resolved.

75.     Based on recently discovered evidence presented by Cassavetes and NYP, the Superior Court has opined that perhaps indispensable parties need to be joined and possibly the statute of limitations has run on claims of AMAG.  A true and correct copy of August 18, 2023 Court Order denying AMAG's Motion for Judgment on the Pleadings is attached hereto is Exhibit "15".

76.     In that August 18, 2023 Court Order, the Superior Court indicated that it was disposed to dismiss, most if not all of the claims asserted in the Consolidated Action.

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

77. On November 15, 2023, issued an Order to Show Cause re Dismissal ("OSC") of the entire case, including possibly under *Cal. Code Civ. Proc. §§ 436, 438*. In response to the OSC, AMAG, Cassavetes and NYP have filed voluminous briefs and exhibits on December 10, 2023, and December 22, 2023.

78. As part of preparing the briefs filed on December 10, and December 22, 2023, counsel for Plaintiffs NYP and Cassavetes did a thorough review of the USCO public records and those documents, described hereinabove. That review revealed that the AMAG liens on the Copyright are inferior to the liens of other registered claimants or lien holders, but are also unperfected or have been totally extinguished because of the above described DPA's. A true and correct copy of LASC's November 15th 2023 OSC attached hereto is Exhibit "16".

79. The Superior Court will hold a hearing on January 5, 2024, regarding the OSC. Plaintiffs NYP and Plaintiffs Cassavetes contend that facts alleged hereinabove support the numerous copyright claims alleged hereinbelow. Moreover, the copyright claims alleged hereinbelow preempt all of the state law claims pending before the LASC.

80. Nevertheless, even if the Superior Court does not stay or dismiss any portions of the 2021 AMAG Action on January 5, 2023, Plaintiffs are informed and believe and thereon allege that the copyright claims for relief set forth below are ripe for exclusive adjudication before this Court.

## STATUE OF LIMITATIONS TOLLING / CONTINUING VIOLATIONS

81. The USCO is the singular regulatory agency in the United States for giving notice of liens, mortgages, and other interests regarding any registered copyright. See 17 U.S.C. §§ 20(d)(1), 204(a), 205(c), and 205(d).

82. Plaintiffs did not fully learn of Defendants' failure to record the DPA's with the USCO until December 2023.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

83.     Therefore, since 2012, when AMAG executed the first of sixteen DPA's, which were never recorded with the USCO, there has been and continues to this day, false representations and false assertions to the world that AMAG has superior and perfected security interests to the Copyright of the Picture as well as full rights to control the (commercial exploitation) of the Picture which it does not.

84.     Furthermore, Plaintiffs did not learn of Defendants' false representations to the LASC resulting in the 2017 Judgment until Defendant AMAG commenced against Cassavetes, on his guaranty of Note referred to above as the "2021 AMAG Action".

85.     Through intensive discovery efforts over the past 24 months, NYP and Cassavetes obtained over 6,000 pages of documents from AMAG, and other documents from the USCO and the SEC, numerous filings relating to the Film as well as state and federal court filings addressing matters related to the actions in the LASC.  Repeated reviews of these documents over the past 4 months revealed the numerous and severe copyright violations committed by AMAG and the other defendants as more fully set forth here and below.

86.     The Film has never been publicly released, and thus these copyright claims are not time barred.

87.     Defendants' acts of infringement are ongoing and continue to this day, including still publicly displaying on the Internet copyright ownership claims as well as displaying unauthorized trailers of the Picture for which Defendants have no rights whatsoever.

## FIRST CLAIM FOR RELIEF

[Direct Copyright Infringement Against Defendant AMAG]

(Violations of 17 U.S.C. §§ 101, 106, 205)

88.     Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, inclusive, as if fully set forth herein.

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

89.   NYP, is and at all relevant times has been, the owner of the valid Copyright in and to the Picture, Yellow, bearing filing receipt number 1-64OBLYV, reflecting a filing date of December 27, 2023.  See Exhibit "17" attached hereto.

90.   Plaintiff Cassavetes is and has been at all relevant times the owner of a valid copyright in his original screenplay ("Screenplay") bearing copyright registration number PAU0055928.

91.   Defendant AMAG executed on or about September 20th of 2013 a DPA in favor of Magna Group in which a portion of AMAG's then existing interests and rights to the Picture were partially assigned to Magna Group for payment to AMAG of $200,000. See Paragraph 33, *supra*.

92.   Neither AMAG nor Magna Group ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling, and continues to tell the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

93.   AMAG's conduct described hereinabove constitutes:

   a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

   b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

   c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

   d.   Conversion of Plaintiffs' physical and electronic versions of the

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

94.     Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue.

95.     AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% if its Loan to NYP, while fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

96.     The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  Plaintiffs are informed and believe, and on that basis allege that these distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

97.     Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

98.     At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

99.     Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

100.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

## SECOND CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

101.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, inclusive, as if fully set forth herein.

102.   NYP, is and at all relevant times has been, the owner of the valid Copyright in and to the Picture, Yellow, bearing filing receipt number 1-64OBLYV, reflecting a filing date of December 27, 2023.  See Paragraph 33, *supra*.

103.   Plaintiff Cassavetes at all relevant times has been the owner of a valid copyright in his original Screenplay.

104.   Defendant AMAG executed on or about February 5, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests and rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $25,000.00. See Paragraph 33, *supra*.

105.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

106.   AMAG's conduct described hereinabove constitutes:

  a.  False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

  b.  Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

  c.  Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in

COMPLAINT FOR COPYRIGHT INFRINGEMENT

violation of 17 U.S.C. §§ 101, 106, 205; and

    d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

107.    Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

108.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

109.    Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

110.    At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

111.    Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

112.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate

remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### THIRD CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

113.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102 and 103, inclusive, as if fully set forth herein.

114.   Defendant AMAG executed on or about February 12, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests and rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000.00. See Paragraph 33, *supra*.

115.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO, thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture when the foregoing facts demonstrate quite to the contrary.

116.   AMAG's conduct described hereinabove constitutes:

    a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

117.    Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

118.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

119.    Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

120.    At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

121.    Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

122.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

///

///

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

**FOURTH CLAIM FOR RELIEF**

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

123.  Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

124.  Defendant AMAG executed on or about February 21, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests and rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $37,235.90. See Paragraph 33, *supra*.

125.  Neither AMAG nor Redwood Management ever recorded this partial note assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

126.  AMAG's conduct described hereinabove constitutes:

a. False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

b. Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

c. Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

d. Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

127.  Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such

infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

128.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

129.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

130.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

131.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

132.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## **FIFTH CLAIM FOR RELIEF**

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

133.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

134.   Defendant AMAG executed on or about April 17, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $81,764.10.  See Paragraph 33, *supra*.

135.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

136.   AMAG's conduct described hereinabove constitutes:

   a. False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

   b. Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

   c. Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

   d. Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

137.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

138.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

139.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

140.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

141.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

142.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## SIXTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

143.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87,102, 103, inclusive, as if fully set forth herein.

144.   Defendant AMAG executed on or about April 25, 2014, a DPA in favor of Coventry in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Coventry for payment to AMAG of $200,000. See Paragraph 33, *supra*.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

145.    Neither AMAG nor Coventry ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

146.    AMAG's conduct described hereinabove constitutes:

      a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

      b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

      c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

      d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

147.    Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

148.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

149.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

150.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

151.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

152.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## SEVENTH CLAIM FOR RELIEF

### (Direct Copyright Infringement Against Defendant AMAG)

### (Violations of 17 U.S.C. §§ 101, 106, 205)

153.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

154.   Defendant AMAG executed on or about April 30, 2014, a DPA in favor of Maremmano in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Maremmano for payment to AMAG of $50,000. See Paragraph 33, *supra*.

155.   Neither AMAG nor Maremmano ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

156.   AMAG's conduct described hereinabove constitutes:

     a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

     b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

     c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

     d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

157.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

158.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

159.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

160.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful,

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

161.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

162.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

**EIGHTH CLAIM FOR RELIEF**

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

163.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103,  inclusive, as if fully set forth herein.

164.   Defendant AMAG executed on or about May 23, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000. See Paragraph 33, *supra*.

165.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

166.   AMAG's conduct described hereinabove constitutes:

    a. False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b. Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

§§101, 106, and 205;

    c.  Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.  Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

167.    Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

168.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

169.    Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

170.    At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

171.    Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

172.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## NINTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

173.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

174.   Defendant AMAG executed on or about May 29, 2014, a DPA in favor of Coventry which a portion of AMAG's then existing interests and rights to the Picture were partially assigned to Coventry for payment to AMAG of $200,000. See Paragraph 33, *supra*.

175.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture when the foregoing facts demonstrate quite to the contrary.

176.   AMAG's conduct described hereinabove constitutes:

    a.  False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.  Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.  Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

COMPLAINT FOR COPYRIGHT INFRINGEMENT

      d.  Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

177.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

178.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

179.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

180.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

181.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

182.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

**TENTH CLAIM FOR RELIEF**

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

183.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

184.   Defendant AMAG executed on or about May 30, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000. See Paragraph 33, *supra*.

185.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

186.   AMAG's conduct described hereinabove constitutes:

    a.  False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.  Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.  Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.  Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

187.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

188.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

189.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

190.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

191.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

192.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

**ELEVENTH CLAIM FOR RELIEF**

(Copyright Infringement)

193.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

194.   Defendant AMAG executed on or about June 6, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000.00. See Paragraph 33, *supra*.

195.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

196.   AMAG's conduct described hereinabove constitutes:

    a.  False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.  Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.  Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.  Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

197.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

198.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

199.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

200.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

201.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

202.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## TWELFTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

203.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

204.   Defendant AMAG executed on or about June 13, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000.00. See Paragraph 33, *supra*.

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

205.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

206.   AMAG's conduct described hereinabove constitutes:

    a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

207.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

208.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

209.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

210.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

211.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

212.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### THIRTEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG )

(Violations of 17 U.S.C. §§ 101, 106, 205)

213.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

214.   Defendant AMAG executed on or about June 20, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $50,000.00. See Paragraph 33, *supra*.

215.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

216.    AMAG's conduct described hereinabove constitutes:

 a. False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

 b. Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

 c. Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

 d. Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

217.    Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

218.    The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

219.    Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

220.    At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful,

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

221.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

222.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### FOURTEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG )

( Violations of 17 U.S.C. §§ 101, 106, 205 )

223.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

224.   Defendant AMAG executed on or about  June 24, 2014, a DPA in favor of JSJ Capital Funding which a portion of AMAG's then existing interests rights to the Picture were partially assigned to JSJ Capital Funding for payment to AMAG of $44,660.68. See Paragraph 33, *supra*.

225.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

226.   AMAG's conduct described hereinabove constitutes:

        a.  False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

      b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

      c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205.

      d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

227.     Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue.

228.    Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

229.    At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

230.    Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

231.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

///

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

**FIFTEENTH CLAIM FOR RELIEF**

(Direct Copyright Infringement Against Defendant AMAG )

(Violations of 17 U.S.C. §§ 101, 106, 205)

232.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

233.   Defendant AMAG executed on or about June 24, 2014, a DPA in favor of LG Capital Funding in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to LG Capital Funding for payment to AMAG of $75,000.00. See Paragraph 33, *supra*.

234.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

235.   AMAG's conduct described hereinabove constitutes:

    a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

236.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

237.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

238.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

239.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

240.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

241.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### SIXTEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG )

(Violations of 17 U.S.C. §§ 101, 106, 205)

242.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

243.   Defendant AMAG executed on or about July 7, 2014, a DPA in favor of Redwood Management in which a portion of AMAG's then existing interests rights to the Picture were partially assigned to Redwood Management for payment to AMAG of $10,000.00. See Paragraph 33, *supra*.

244.   Neither AMAG nor Redwood Management ever recorded this partial assignment with the USCO thereby blatantly interfering with Plaintiffs' rights to distribute and or make copies of the Picture because AMAG has been telling the world repeatedly for years that it controls all distribution rights and owns the copyright to the Picture, when the foregoing facts demonstrate quite to the contrary.

245.   AMAG's conduct described hereinabove constitutes:

    a.   False or wrongful or fraudulent assertion of Copyright Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205;

    b.   Tortious interference with Plaintiff's contractual rights as to copying and distribution of the Film in violation of 17 U.S.C. §§101, 106, and 205;

    c.   Tortious interference with Plaintiffs' prospective economic advantages related to the copying and distribution of the Film in violation of 17 U.S.C. §§ 101, 106, 205; and

    d.   Conversion of Plaintiffs' physical and electronic versions of the Film in violation of Plaintiffs' rights under 17 U.S.C. §§101, 106, and 205.

246.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

247.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

248.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

249.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

250.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

251.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### SEVENTEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205)

252.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103,  inclusive, as if fully set forth herein.

253.   AMAGs fraudulently obtained October 2017 Judgment now was, colorably and erroneously gave AMAG, falsely or colorably, the ability to represent to any and all third parties that AMAG had full and complete control and ownership of distribution rights and the Copyright in the Film.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

254.   Between 2017 and the present, AMAG made this repeated assertion and thus fraudulently represented to the world that it had affected a transfer of copyright ownership and other rights of copyright set forth under 17 USC § 102. These assertions by AMAG in reliance on its fraudulently obtained 2017 Judgment were wrongful assertions of Copyright and therefore violated the   Copyright of Plaintiffs as described here and above.

255.   Defendants have unrealized and also have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such infringements are permitted to continue. AMAG deliberately and intentionally obtained with false representations, the 2017 Judgment from the LASC against Plaintiff NYP in an amount totaling approximately $500,000.  This 2017 Judgment should never and would never have been granted had the court been fully informed of all of the information withheld by AMAG.

256.   Indeed, the October 2017 Judgment was part of AMAG's overall scheme to fraudulently recoup more than 200% of its loaned NYP, while also fraudulently and potentially taking control of possession of all rights in the Film and repeatedly announcing or alleging same.

257.   The Film cost approximately $15,000,000 to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal. These distribution deals would have generated between $40 and $60 million in net revenues to NYP, and easily paid off any and all lien holders.

258.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

259.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

260.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

261.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## EIGHTEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

(Violations of 17 U.S.C. §§ 101, 106, 205 )

262.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

263.   AMAGs fraudulently obtained October 2017 Judgment now was, colorably and erroneously gave AMAG, falsely or colorably, the ability to represent to any and all third parties that AMAG had full and complete control and ownership of distribution rights and the Copyright in the Film.

264.   Between 2017 and the present, AMAG made this repeated assertion and thus fraudulently represented to the world that it had affected a transfer of copyright ownership and other rights of copyright set forth under 17 USC § 102. These assertions by AMAG in reliance on its fraudulently obtained 2017 Judgment were wrongful assertions of Copyright and therefore violated the copyrights of Plaintiffs as described here and above.

265.   Indeed, Markoff, AMAG's president/CEO, who is also A-Mark's president/ CEO, sent a June 26, 2018 letter to IMBD, the leading entertainment industry internet database demanding IMBD change its records regarding the Picture to reflect that AMAG owned all of the copyright and distribution rights. A true and correct copy of June 26, 2018 letter from AMAG to IMBD, signed by Defendant Steve Markoff as Chairman of AMAG is attached as Exhibit "13".

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

266.   Indeed, the October 2017 Judgment was part of AMAG's overall scheme to fraudulently recoup more than 200% of its loaned NYP, while also fraudulently and potentially taking control of possession of all rights in the Film and repeatedly announcing or alleging same.

267.   The Film cost approximately $15,000,000 to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal. These distribution deals would have generated between $40 and $60 million in net revenues to NYP, and easily paid off any and all lien holders.

268.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

269.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

270.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

271.    AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## NINETEENTH CLAIM FOR RELIEF

(Direct Copyright Infringement Against Defendant AMAG)

( Violations of 17 U.S.C. §§ 101, 106, 205 )

272.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

273.   Jeffrey Berg ("Berg") and Nicholas Cassavetes ("Cassavetes"), separately guaranteed the Note the latter was one of the managing members of YP along with Manu Kumaran ("Kumaran").  See true and correct copies of Berg Continuing Personal Guaranty and Cassavetes Continuing Personal Guaranty, attached hereto as Exhibits "6" and "7".

274.   The negotiations between AMAG and NYP for the loan during the Spring and Summer of 2011, involved McNall, an for Markoff, and thus was and still is acting as an officer or agent with authority for A-Mark and AMAG.  In several discussions McNall, on behalf of all other Defendants, YP, Kumaran and Cassavetes that AMAG would not loan money to YP without the guarantees of Berg and Cassavetes.

275.   McNall personally assured Cassavetes and Kumaran, both of whom were the managing members of YP, that the guarantees were just a formality and that Markoff (i.e. AMAG) would never seek to enforce them Berg or Cassavetes.

276.   These personal assurances took place at a film editing studio in Hollywood in June or July 2011, while Cassavetes was editing the Film.  Kumaran the producer of the Film, was present when McNall pressured Cassavetes to sign his Guarantee.

277.   Markoff nor McNall ever disclosed to Berg any information that the assignees had paid  $1.22 Million to purchase the Note.  Instead, they falsely represented to Berg in multiple emails between 2018 and 2020 that nearly $500,000 was still due on the 2011 Note, pursuant to the October 2017 Judgment.

278.   On February 13, 2020, Jeffrey Berg entered into a settlement of his guaranty to AMAG for a $300,000.00 payment to AMAG ("Berg Settlement Agreement").  A copy of the Berg Settlement Agreement is attached hereto as Exhibit "14".

///

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

279.   The Berg settlement agreement provides:

        *"2.*   <u>Representations, Warranties and Indemnification by</u>
               <u>Lender</u>.

           a.   Lender represents and warrants as follows: …  (iii) it has
               the right, title and interest in and to the payments being
               made to it under this Settlement Agreement; and (iv) the
               Settlement Payment is subject to no judgments, liens, or
               other claims of record against it. (Emphasis added.)"

280.   That statement is patently false because the Assignees still had outstanding, *though* unperfected security interests in the 2011 Note, the 2011 Copyright Mortgage and thus liens upon the Copyright of the Film and upon any guaranty of the Film by Berg or Cassavetes and proceeds from any distribution under UCC § § 9109, 9318.

281.   AMAG's conduct described hereinabove constitutes:

           a.   False or wrongful or fraudulent assertion of Copyright
               Ownership in violation Plaintiffs' rights under 17 U.S.C. §§101,
               106, and 205;

           b.   Tortious interference with Plaintiff's contractual rights as to
               copying and distribution of the Film in violation of 17 U.S.C.
               §§101, 106, and 205;

           c.   Tortious interference with Plaintiffs' prospective economic
               advantages related to the copying and distribution of the Film in
               violation of 17 U.S.C. §§ 101, 106, 205; and

           d.   Conversion of Plaintiffs' physical and electronic versions of the
               Film in violation of Plaintiffs' rights under 17 U.S.C. §§101,
               106, and 205.

282.   Thus, Defendants have unrealized have realized unjust profits, gains and advantages as a proximate result of their repeated infringements as long as such

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

infringement is permitted to continue. AMAG deliberately and intentionally failed to record the DPA's with the USCO, as part of AMAG's overall scheme to fraudulently recoup more than 200% of its Loan to NYP, while also fraudulently and intentionally taking control and possession, of all rights in the Film, and repeatedly announcing or alleging same.

283.   The Film cost approximately $15 million to produce, and AMAG repeatedly rejected, without any reasonable justification, every proposed distribution deal.  These distribution deals would have generated between $40-$60 million in net revenues to NYP, and easily paid off any and all lienholders.

284.   Plaintiffs are entitled to recover from Defendant AMAG the amount of actual damages sustained or incurred as a result of the infringement under 17 U.S.C. § 504, and such amount as shown by the appropriate evidence and profits lost.

285.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of AMAG was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

286.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

287.   AMAG's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## TWENTIETH CLAIM FOR RELIEF

(Contributory Copyright Infringement Against Defendant Markoff)

288.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

COMPLAINT FOR COPYRIGHT INFRINGEMENT

Contributory copyright infringement exists when "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another". *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

289.   In short, "a defendant contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." See *Perfect 10, v. Visa International*, 494 F.3d 788, 795 (9th Cir. 2007).

290.   In the instant case, defendant Steve Markoff is the president and chairman and sole shareholder of defendant AMAG. Thus, Defendant Markoff contributorily caused all 19 acts of direct infringement described hereinabove because he had knowledge of each act of infringement, he materially aided and contributed or directed each infringement as well as he induced each infringement by collaborating with Defendant Frcek and Defendant McNall in committing their various acts of infringement and fraud against the copyright office, the LASC, and all the Plaintiffs named herein, as well as Jeffrey Berg.

291.   Plaintiffs are entitled to recover from Defendant Markoff the amount of actual damages sustained or incurred as a result of the infringement under 17 U.S.C. § 504, and such amount as shown by the appropriate evidence and profits lost.

292.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) as the conduct of Defendant Markoff was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

293.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

294.   Markoff's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

### TWENTY-FIRST CLAIM FOR RELIEF

(Contributory Copyright Infringement Against Defendant McNall )

295.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

296.   Contributory copyright infringement exists when "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another". *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

297.   In short, "a defendant contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement. See *Perfect 10, v. Visa International*, 494 F.3d 788, 795 (9th Cir. 2007).

298.   In the instant case, Defendant Bruce McNall is Co-Executive Chairman of Defendant AMAG, and reports directly to Defendant Markoff.

299.   Thus, Defendant McNall contributorily caused all 19 acts of direct infringement described hereinabove because he had knowledge of each act of infringement, he materially aided and contributed or directed each infringement as well as he induced each infringement by collaborating with Defendant Frcek and Defendant Markoff in committing their various acts of infringement and fraud against the copyright office, the LASC, and all the Plaintiffs named herein, as well as Jeffrey Berg. We ask the Court to be mindful of McNall's prior conviction for RICO, wire fraud, and bank fraud, in 1997, for which he served 70 months in federal prison.

300.   Plaintiffs are entitled to recover from Defendant McNall the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

301.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of McNall was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

302.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

303.   McNall's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## TWENTY-SECOND CLAIM FOR RELIEF

(Contributory Copyright Infringement Against Defendant Frcek )

304.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

305.   Contributory copyright infringement exists when "one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another". *Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004).

306.   In short, "a defendant contributorily infringes when he (1) has knowledge of another's infringement and (2) either (a) materially contributes to or (b) induces that infringement." See *Perfect 10, v. Visa International*, 494 F3d 788, 795 (9th Cir. 2007).

307.   In the instant case, Defendant Robert Frcek, is the CFO of Defendant AMAG.  He personally created the Spreadsheet reflecting the erroneous calculations concerning the 16 DPA's for which Defendant AMAG received over $1.22 Million, over 22% above the initial Loan Amount.

///

COMPLAINT FOR COPYRIGHT INFRINGEMENT

308.   Furthermore, Defendant Robert Frcek, as CFO of Defendant AMAG, re-affirmed the fraudulent calculations of the Spreadsheet when he signed a declaration under penalty of perjury in support of Defendant AMAG's 2017 Judgment which was granted erroneously, due to a fraud on the Court caused by all named Defendants herein.

309.   Thus, Defendant Frcek contributorily caused all 19 acts of direct infringement described hereinabove because he had knowledge of each act of infringement, he materially aided and contributed or directed each infringement as well as he induced each infringement by collaborating with Defendant Markoff and Defendant McNall in committing their various acts of infringement and fraud against the copyright office, the LASC, and all the Plaintiffs named herein, as well as Jeffrey Berg.

310.   Plaintiffs are entitled to recover from Defendant Frcek the amount of actual damages sustained or incurred as a result of the infringement under 17 U.S.C. § 504, and such amount as shown by the appropriate evidence and profits lost.

311.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) as the conduct of Frcek was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

312.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

313.   Frcek's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

///

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

**TWENTY-THIRD CLAIM FOR RELIEF**

(Vicarious Copyright Infringement Against Defendant Markoff )

314.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 87, 102, 103, inclusive, as if fully set forth herein.

315.   Vicarious liability attaches when a defendant "enjoys a direct financial benefit from another's infringing activity and has the right and ability to supervise the infringing activity. *See Ellison the Robertson,* 357 F,3d 1072, 1076 (9th Cir.).

316.   In the instant Defendant Steven Markoff is vicariously liable for the 19 acts of direct copyright infringement committed by Defendant AMAG, described hereinabove.  Defendant Markoff, as the President/CEO of Defendant AMAG, and as the sole shareholder of Defendant AMAG, has enjoyed a direct financial benefit from all of the 19 acts of direct copyright infringement described hereinabove committed by Defendant AMAG. Furthermore, with Defendant Markoff as the president and CEO, of Defendant AMAG, Markoff clearly had the right and the ability to supervise the infringing activity of Defendant AMAG, as well as supervise the conduct of his co- conspirators, Defendant McNall and Defendant Frcek.

317.   Plaintiffs are entitled to recover from Defendant Markoff the amount of actual damages sustained or incurred as a result of the infringement under 17 USC § 504, and such amount as shown by the appropriate evidence and profits lost.

318.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U.S.C. § 504(c)(2) as the conduct of Defendant Markoff was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

319.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

320.   Markoff's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully

COMPLAINT FOR COPYRIGHT INFRINGEMENT

1   compensated or measured in monetary damages. Plaintiffs have no adequate

2   remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to

3   prohibit further infringement of Plaintiffs' rights in the Film.

**TWENTY-FOURTH CLAIM FOR RELIEF**

(Vicarious Copyright Infringement Against Defendant McNall)

6   321.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1

7   through 87, 102, 103, inclusive, as if fully set forth herein.

8   322.   Vicarious liability attaches when a defendant "enjoys a direct financial

9   benefit from another's infringing activity and has the right and ability to supervise

10  the infringing activity." *See Ellison the Robertson,* 357 F,3d 1072, 1076 (9th Cir.).

11  323.   In the instant case, Defendant Bruce McNall is vicariously liable for

12  the 17 acts of direct copyright infringement described hereinabove committed by

13  Defendant AMAG (the "Direct Acts").  McNall's name is all over the emails and

14  documents that confirm the 19 acts of direct infringement by AMAG.

15  324.   For the relevant timeframe, Defendant McNall is and was the Co-

16  Executive Chair of Defendant AMAG and answers to AMAG's President, Steven

17  Markoff; any communications exchanged between McNall and Plaintiffs or other

18  percipient witnesses named herein were always with the assurance that McNall's

19  authority came from Defendant Markoff.

20  325.   Thus, Defendant McNall has enjoyed a direct financial benefit from all

21  of the 19 Direct Acts of copyright infringement described hereinabove committed

22  by Defendant AMAG. Furthermore, given McNall's position within AMAG

23  throughout the timeframe of 2011-2022, he clearly had the right and the ability to

24  supervise the infringing activity of Defendant AMAG, as well as facilitate and

25  contribute to the conduct of his co- conspirators, Defendant Markoff and Defendant

26  Frcek.

27  326.   Plaintiffs are entitled to recover from Defendant McNall the amount

28  of actual damages sustained or incurred as a result of the infringement under 17

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

1  U.S.C. § 504, and such amount as shown by the appropriate evidence and profits
2  lost.

3      327.  At Plaintiff's election, Plaintiffs are entitled to maximum statutory
4  damages pursuant to 17 U.S.C. § 504(c)(2) as the conduct of Defendant McNall was
5  willful, intentional, deliberate, with malice, and in complete reckless disregard of
6  Plaintiffs' rights.

7      328.  Plaintiffs are also entitled to recover attorneys' fees and cost of suit
8  pursuant to 17 U.S.C. §505.

9      329.   McNall's conduct has caused, and unless enjoined by the court, will
10  continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully
11  compensated or measured in monetary damages. Plaintiffs have no adequate
12  remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to
13  prohibit further infringement of Plaintiffs' rights in the Film.

14                **TWENTY-FIFTH CLAIM FOR RELIEF**

15         (Vicarious Copyright Infringement Against Defendant Frcek )

16      330.  Plaintiffs reallege and incorporate herein by reference Paragraph 1
17  through 87, 102, 103, inclusive, as if fully set forth herein.

18      331.  Vicarious liability attaches when a defendant "enjoys a direct financial
19  benefit from another's infringing activity and has the right and ability to supervise
20  the infringing activity." *See Ellison the Robertson,* 357 F.3d 1072, 1076 (9th Cir.).

21      332.  In the instant case, Defendant Robert Frcek, is the CFO of Defendant
22  AMAG.  He personally created the Spreadsheet reflecting the erroneous
23  calculations concerning the 16 DPA's for which Defendant AMAG received over
24  $1.22 Million, over 22% above the initial Loan Amount.

25      333.  Furthermore, Defendant Robert Frcek, as CFO of Defendant AMAG,
26  re-affirmed the fraudulent calculations of the Spreadsheet when he signed a
27  declaration under penalty of perjury in support of Defendant AMAG's 2017
28  Judgment which was granted erroneously, due to a fraud on the Court caused by all

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

named Defendants herein.

334.   Thus, Defendant Frcek, as the CFO of Defendant AMAG during the timeframe of the conduct described hereinabove, had a direct financial interest in the Direct Acts. Furthermore, as CFO of Defendant AMAG, he had the right and ability to supervise others who assisted him with the conduct described hereinabove.

335.   Plaintiffs are entitled to recover from Defendant Frcek the amount of actual damages sustained or incurred as a result of the infringement under 17 U.S.C. § 504, and such amount as shown by the appropriate evidence and profits lost.

336.   At Plaintiff's election, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U. S. C. § 504(c)(2) as the conduct of Defendant Frcek was willful, intentional, deliberate, with malice, and in complete reckless disregard of Plaintiffs' rights.

337.   Plaintiffs are also entitled to recover attorneys' fees and cost of suit pursuant to 17 U.S.C. §505.

338.    Frcek's conduct has caused, and unless enjoined by the court, will continue to cause, Plaintiffs repetitive and irreparable injury that cannot be fully compensated or measured in monetary damages. Plaintiffs have no adequate remedy at law. Pursuant to 17 U.S.C. § 502 are also entitled to injunctive relief to prohibit further infringement of Plaintiffs' rights in the Film.

## TWENTY-SIXTH CLAIM FOR RELIEF

### (Declaratory Relief Under Federal Declaratory Relief Act)

339.   Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 338, inclusive, as if fully set forth herein.

340.   Plaintiffs are informed and believe and thereon allege that a dispute has arisen regarding the terms and conditions of the Loan Agreement, the terms and conditions of the 2017 Judgment and the manner in which the Collateral should be

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

disposed as required by the Judgment by AMAG.  Therefore, this Court must review the facts and circumstances and declare the acts committed by AMAG under the color of the Judgment to be illegal, null and void as a matter of law.  Therefore, Plaintiffs desires a declaration its rights regarding the alleged Loan Agreement and the 2017 Judgment.

341.   Furthermore, an actual controversy has arisen and now exists relating to the rights and duties of Plaintiffs and Defendants under the United States copyright laws in that Plaintiffs contend that they are the sole owners of the Copyright in the Film, and that they control all other rights defined in 17 U.S.C. §106. Plaintiffs further contend that Defendants have repeatedly infringed the Copyright of the Film for which damages should be awarded. Plaintiffs further contend that there are no sums due and owing on the 2011 Note and that any and all claims of Defendants regarding any and all rights in the Film have been extinguished.

342.   Defendants apparently contend that they are entitled to create, distribute, market, advertise, promote, sell, or offer for sale in any medium the Film; and further Defendants contend that they own the Copyright in the Film; and further Defendants contend that there are sums due and owing on the 2011 Note.

343.   Pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure, Plaintiffs request a judicial determination of their rights, and a declaration that Defendants' continued acts of ownership, rights to distribute the Film constitutes infringement of the Copyright of the Film.

344.   A judicial declaration is necessary and appropriate at this time in order that Plaintiffs may ascertain the parties' rights.

345.   Plaintiffs are not able to ascertain with any precision the amount of Damages at stake, but are informed and believe that these damages are in excess of $25 million.  When Plaintiffs have better ascertained the amount of damages,

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

1   Plaintiffs will seek leave of this Court to amend this Complaint to provide
2   additional specific information.

3                                   **PRAYER**

4        **WHEREFORE**, Plaintiffs prays for judgment against the Defendants herein
5   as follows:

6        1.     That the Court find that:

7              A.     Defendant AMAG has repeatedly infringed and thus violated the
8                     Copyright in the Film;

9              B.     Defendants Markoff, McNall, and Frcek have contributed to the
10                    infringement of the Copyright in the Film; and

11             C.     Defendants McNall, Frcek, and Markoff have repeatedly and
12                    vicariously infringed the Copyright in the Film.

13       2.     That the Court enter a declaration that Defendants' continued conduct,
14  including but not limited to retaining possession of the physical and electronic
15  manifestations of the Film constitutes infringement;

16       3.     That the Court find that as a direct and proximate result of Defendants'
17  foregoing acts, Plaintiffs are entitled to the following damages:

18             a.     At Plaintiffs' election, statutory damages of up to $150,000 for
19  each separate and every of act of the infringement of the Copyright in the Film
20  **(qualifying for $19,950.000 in statutory damages)**, for willful infringement pursuant
21  to 17 U.S.C. § 504(c), or Plaintiffs' actual damages estimated in excess of $25
22  Million sustained as a result of Defendants' acts of copyright infringement according
23  to proof and Defendants' profits obtained as a result of their acts of copyright
24  infringement according to proof; and

25             b.     Plaintiffs' reasonable attorneys' fees and costs pursuant to the
26  Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*, and 17 U.S.C. § 505.

27       4.     That the Court find that the threat of irreparable harm to Plaintiffs as a
28  result of Defendants' conduct leaves Plaintiffs without adequate remedy at law, and

COMPLAINT FOR COPYRIGHT
INFRINGEMENT

therefore that Plaintiffs are entitled to an injunction restraining Defendants, their agents, servants, employees, attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations acting in concert with them, from directly or indirectly infringing the copyrights in the Film, including but not limited to continuing to distribute, market, advertise, promote, produce, sell, or offer for sale the Film or any works derived or copied from the Film, and from participating or assisting in any such activity whether or not it occurs in the United States.

5.      That the Court enjoin Defendants, their agents, servants, employees, attorneys, successors, assigns, subsidiaries, and all persons, firms, and corporations acting in concert with them, from directly or indirectly infringing the copyrights in the Film, including but not limited to continuing to distribute, copy, publicly perform, market, advertise, promote, produce, sell, or offer for sale, in any medium, the Film or any works derived or copied from the Film, and from participating or assisting in any such activity whether or not it occurs in the United States.

That the Court grant such other, further relief as it deems just and proper.

DATED:   January 4, 2024            TROPE LAW GROUP, P.C.

KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFFS

## **DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues triable by a jury in the above-entitled action.

DATED:   January 4, 2024            TROPE LAW GROUP, P.C.

KONRAD L. TROPE,
ATTORNEYS FOR PLAINTIFFS

COMPLAINT FOR COPYRIGHT
INFRINGEMENT